## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANTHONY ALLEN, #B43715, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  10–cv–506–MJR–SCW |
| | ) | |
| KRISTA SCHORN ALLSUP, JENNIFER CLENDENIN, JEANNETTE COWAN, LAWRENCE KANIA, WILLIAM SPILLER, SHANNIS STOCK, and KATHY WESTERMAN, | ) ) ) ) ) | |
| | ) | |
| Defendants. | | |

# <u>MEMORANDUM AND ORDER</u>

**REAGAN, District Judge:**

### I.  <u>Introduction</u>

Before the Court is a summary judgment motion filed by Defendants Krista Schorn Allsup, Jennifer Clendenin, Jeannette Cowan, Lawrence Kania, William Spiller, Shannis Stock, and Kathy Westerman (Doc. 59 & 60).  Specifically, Defendants argue that they are entitled to summary judgment on Plaintiff's claims of retaliation and denial of access to the courts because Plaintiff's claims are barred under the *Heck* doctrine (*Heck v. Humphrey*, **512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)**) and res judicata.  Defendants also argue that, even if the claims are not barred, they are entitled to summary judgment on both Plaintiff's retaliation and denial of access to the courts claims because Plaintiff has failed to show that Defendants purposefully housed him at a high aggression level due to retaliation, and because Plaintiff has failed to show any actual injury caused by a denial of access to the courts.  Based on the following, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment.

## II.  **Factual Background**

This case stems from events which took place while Plaintiff was an inmate at Menard Correctional Center.  Plaintiff's Complaint alleges that while housed at Menard he was denied access to the courts by Defendant Allsup and was retaliated against by various members of Menard Correctional Center staff.

As to his denial of access to the courts claim, Plaintiff  that Defendant Allsup refused to copy certain exhibits and failed to provide him with relevant case law needed for his post-conviction case and his state court retaliation case.  Plaintiff contends that on December 12, 2007, he filed a grievance against Alllsup because she failed to copy legal papers for him (Doc. 63-1 at ¶ 2).  Allsup later filed a disciplinary report against him on February 4, 2008 (*Id.* at ¶ 4).  Plaintiff also states that between November 2007 and January 2008, and beyond, he put in request slips to visit the library but was denied access (*Id.* at ¶ 5).  According to inmate records, Plaintiff visited the law library 47 times between May 2007 and November 2011 (Doc. 60 Ex. 8 at ¶6).  He was also visited 16 times by library personnel during cellhouse tours when the prison was on lockdown (*Id.*).

Plaintiff filed a retaliation claim against Defendant Allsup and others in the Circuit Court for the Twentieth Judicial Circuit for the State of Illinois on January 9, 2009, regarding Allsup and others' failure to provide him with legal materials and access to the law library (Doc. 63-1 at ¶ 8).  Plaintiff's Complaint in the state case also included claims regarding the disciplinary ticket he received from Allsup in February 2008.  During the pendency of his suit, Plaintiff received a disciplinary ticket on April 3, 2009, for scraping metal paint off his bed frame, for which he was sentenced to three months in segregation (*Id.* at ¶¶ 9-10).  On August 28, 2009, defendants in that case filed a motion for summary judgment (Doc. 60 Ex. 3).  Plaintiff asked the state court for additional time to respond, which was granted, and he ultimately filed a 61-page responsive brief (Doc. 60 Exs. 4 & 5).  The state court

granted summary judgment for the defendants because there were no issues of material fact; the court found that the discipline issued against Plaintiff was motivated by Plaintiff's violation of the rules, not any protected conduct.  (Doc. 60 Ex. 6).

The Complaint also alleges that Plaintiff was placed in moderate aggression level housing, even though he had a low aggression level rating, in retaliation for his filing litigation against the prison and complaining about his conditions of confinement to prison employees.  From  2009 to 2011, Plaintiff has been increased from a low aggression level to a moderate aggression level even though his aggression rating remained a "5," which is normally indicative of a low aggression level (Doc. 63-1 at ¶ 18).  On April 11, 2007, and March 5, 2008, an aggression level assessment was performed and Plaintiff was rated a level 6 and recommended for moderate aggression level housing (Doc. 60 Ex. 7 at ¶¶ 6-7; Exs. 7-1 and 7-2).  An aggression level determination was again performed on December 4, 2009, and Plaintiff was rated a level 5 and was recommended for low aggression level housing(Doc. 60 Ex. 7 at ¶ 8; Ex. 7-3).  However, on March 5, 2010, another aggression rating was performed; although Plaintiff again scored a "5," he was recommended for moderate aggression level placement by Internal Affairs for "Admin. Concerns" (*Id.* at ¶ 9; Ex. 7-4).   On January 1, 2011,  Plaintiff again scored a "5," and was again recommended for a moderate aggression level housing due to "Admin. Concerns" (*Id.* at ¶ 11; Ex. 7-5).  Placement Officer Brett Meyerhoff noted that inmate aggression levels are usually determined once a year and, while a level 5 aggression rating usually corresponds with a low aggression level placement, there are instances where a 5 rating can also trigger a moderate aggression level assignment, if internal affairs determines that additional security concerns warrant a higher aggression level assignment (*Id.* at ¶¶ 2 & 5).  No further security concerns were noted in Plaintiff's records, other than "Admin. Concerns".

Plaintiff's Complaint also alleges that he was retaliated against by being issued a

disciplinary report for scraping paint off his bed frame and for gang related activity.  On April 3, 2009, Plaintiff received a disciplinary ticket for scraping paint off of his bed (Doc. 63-1 at ¶ 9).  He was placed in segregation for three months as a result of the ticket (Id. at ¶ 10).  The ticket, however, was ultimately expunged on April 3, 2009 (Id. at ¶ 14).  Plaintiff also received a disciplinary ticket for gang activity in the summer of 2011 (Doc. 63-1 at ¶ 23).  At the time Plaintiff received the ticket, he was no longer in a gang– a fact which he states he made clear to the Illinois Department of Corrections, Menard Correctional Center employees, and the defendants (I*d*. at ¶¶ 24-25).  The ticket was remanded by the Administrative Review Board in August 2011 and a hearing was held on September 5, 2011– which Plaintiff states he did not attend (*Id.* at ¶ 26).  The ticket was ultimately rewritten and Plaintiff remained in segregation (*Id.*).

### III.   Summary Judgment Standard

Under **FEDERAL RULE OF CIVIL PROCEDURE 56(c)**, summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, **477 U.S. 317, 322 (1986).**  *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005)**.  The burden is upon the moving party to establish that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Co.*, **398 U.S. 144, 160 (1970).**  *See also Lawrence v. Kenosha County*, **391 F.3d 837, 841 (7th Cir. 2004)**.  A fact is material if it is outcome determinative under applicable law.  *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986);** *Ballance v. City of Springfield, Illinois Police Department*, **424 F.3d 614, 616 (7th Cir. 2005);** *Hottenroth v. Village of Slinger,* **388 F.3d 1015, 1027 (7th Cir. 2004).**  Even if the facts are not in dispute, summary

judgment is inappropriate when the information before the court reveals that "alternate inferences can be drawn from the available evidence." *Spiegla v. Hull*, **371 F.3d 928, 935 (7th Cir. 2004)**. *See also Anderer v. Jones*, **385 F.3d 1043, 1064 (7th Cir. 2004).**

The threshold inquiry is to determine whether there is the need for a trial; whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

> [T]his standard mirrors the standard for a directed verdict under **FEDERAL RULE OF CIVIL PROCEDURE 50(a)**, which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.

*Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986)**. *See also Celotex Corporation v. Catrett*, **477 U.S. 317, 322-23 (1986);** *Packman v. Chicago Tribune Co.*, **267 F.3d 628, 637 (7th Cir. 2001);** *Sybron Transition Corporation v. Security Insurance Company of Hartford*, **107 F.3d 1250, 1255 (7th Cir. 1997).**

A showing of a mere factual disagreement between the parties is insufficient to forestall summary judgment; the factual issue must be "material," meaning that the issue must be one affecting the outcome of the suit. *See Outlaw v. Newkirk*, **259 F.3d 833, 837 (7th Cir. 2001)**. A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, **477 U.S. at 323**. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*.

## IV.  <u>Analysis</u>

Defendants argue that they are entitled to summary judgment on Count I, the retaliation claim, because Plaintiff's claims are barred by res judicata, and because Plaintiff cannot show that Defendants purposefully housed him with high aggression level inmates in retaliation for Plaintiff filing

grievances.  As to Count II, the denial of access to the courts claim, Defendants argue that the claim is barred by *Heck* and that Plaintiff has failed to show an actual injury.

## A.      Count I - Retaliation

### 1.        Res Judicata

Defendant Allsup argues that Plaintiff's retaliation claim against her is barred by the doctrine of res judicata.  Specifically, Defendant Allsup argues that Plaintiff's claims in this case are the same as the case filed by Plaintiff against Allsup in the Circuit Court of the Twentieth Judicial District, Randolph County, Illinois.  In that case, Plaintiff alleged that Defendant Allsup had retaliated against him for filing grievances by denying him access to legal copies in February of 2008, and by issuing him a false disciplinary report on February 4, 2008, and February 5, 2008, for threats and insolence.  Plaintiff's current Complaint in this case alleges that Defendant Allsup refused to copy exhibits and provide assistance in Plaintiff's cases (including in his retaliation case), and that Allsup wrote a disciplinary report against Plaintiff, alleging that Plaintiff threatened her.

Res judicata applies when the prior case: "(1). . . reached a final judgment on the merits; (2) involve the same parties or their privies as the current claims; and (3) constitute the same cause of action as the current claims." *Garcia v. Village of Mount Prospect*, **360 F.3d 630, 635 (7th Cir. 2004) (citing** *Pirela v. Vill. of N. Aurora*, **935 F.3d 909, 911 (7th Cir. 1991);** *River Park, Inc. v. City of Highland Park*, **184 Ill.2d 290, 234 Ill.Dec. 783, 703 N.Ed.2d 883, 889 (1998))**.  Here, the Court agrees that Plaintiff's claims against Allsup  are barred by res judicata, at least to the extent that they allege actions that occurred prior to the filing of Plaintiff's state court complaint.

Although Plaintiff contends that his state court case did not proceed to a final judgment on the merits, it is clear from the state court record that Plaintiff presented his claims to the state court and he ultimately lost his case at the summary judgment level, even though he had filed a 61-page

response.  While Plaintiff argues that it was not a "full and fair opportunity to litigate" his claims because the state court was allegedly unwilling to protect Plaintiff's federal rights by failing to acknowledge disputed facts, the Court finds that Plaintiff fully presented his case to the state court.  Although Plaintiff did not ultimately agree with the outcome of the state court proceedings, there is no evidence that the state court denied him an opportunity to litigate his case.

Furthermore, Plaintiff's claims in the state court case involved the same individuals and the same causes of action.  Plaintiff's complaint in state court alleged that Defendant Allsup had retaliated against him by refusing to provide him with legal copies and legal assistance and by issuing him a disciplinary report for threats.  Like the state court case, Plaintiff's current Complaint also alleges that Allsup denied him access to legal materials and issued him a disciplinary ticket for insolence and threats.  Thus, this Court is presented with the same defendant and claims as the state court case.  The Court notes, however, that Plaintiff does allege in his current Complaint that Allsup refused to provide him legal assistance in preparing for his retaliation case.  This claim presumably implicates actions by Allsup that occurred after the filing of Plaintiff's state case and were not a part of his state claims.  Thus, to the extent that any of Plaintiff's allegations occurred after the filing of his state court case, those allegations of retaliation are not barred by res judicata and are still at issue in the case.

However, to the extent that Plaintiff alleges retaliation by Allsup by issuing him a disciplinary ticket for threats in February of 2008 and retaliation by denying his access to legal materials prior to the filing of the state court claim, Plaintiff's claims are barred by res judicata.  Accordingly, the Court **GRANTS IN PART** Defendant Allsup's motion for summary judgment as to Plaintiff's retaliation claim against her.  The Court **GRANTS** summary judgment as to the claims of retaliation involving the disciplinary report Defendant Allsup wrote as well as the claims of retaliation related to her refusal to provide legal assistance prior to Plaintiff filing his state court complaint.  Any allegations

of retaliation related to her refusal to provide legal assistance after the filing of Plaintiff's state retaliation case remain for trial.

### 2. Retaliation

The remainder of the Defendants allege that they are entitled to summary judgment on Plaintiff's claim of retaliation for filing grievances by transferring him to a cellbock that houses moderate and high aggression level inmates despite Plaintiff's low aggression level rating.   In order to establish a First Amendment retaliation claim under 42 U.S.C. § 1983, a plaintiff must demonstrate that he was "engaged in activity protected by the First Amendment" and that he "suffered a deprivation that would likely deter First Amendment activity in the future." *Bridges v. Gilbert*, **557 F.3d 541, 546 (7th Cir. 2009)**.   Plaintiff must also demonstrate that "his speech was at least a motivating factor in the [defendant's] action" in order to make his prima facie case. *Zellner v. Herrick*, **639 F.3d 371, 378-79 (7th Cir. 2011) (citing** *Massey v. Johnson*, **457 F.3d 711, 716 (7th Cir. 2006))**.   Once Plaintiff has made his prima facie case, the burden shifts to the defendants to rebut with evidence that the defendant's animus, though a sufficient condition, was not a necessary condition of the conduct– i.e., it would have happened anyway. *Greene v. Doruff*, **660 F.3d 975, 980 (7th Cir. 2011)**.   Plaintiff "must then demonstrate that the defendant's proffered reasons for the decision were pretextual and that the retaliatory animus was the real reason for the decision." *Zellner*, **639 F.3d at 379**.   At the summary judgment stage, "mere speculation" on the plaintiff's part is insufficient; instead, a plaintiff must come forward with some evidence of causation. *Rockwell Automation, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, **544 F.3d 752, 757 (7th Cir. 2008)**.

Here, issues of material fact still remain as to why Plaintiff was recommended and placed in moderate aggression level housing while he maintained a 5, low aggression level rating.   An affidavit from Placement Officer Brett Meyerhoff indicates that there are some situations where, even though

an inmate is rated a 5, in terms of aggression, he will still be determined to have a moderate aggression level due to additional security concerns identified by internal affairs. However, Defendants fail to explain what specific additional security concerns were implicated in Plaintiff's case (Doc. 60 Ex. 7 at ¶¶ 5, 9-11; Ex. 7-4 & 7-5). Given the vague explanation offered by Internal Affairs, there remains an issue of fact as to whether Plaintiff was placed there out of retaliation or due to other legitimate reasons. Therefore, the Court **DENIES** summary judgment as to Plaintiff's retaliation claims regarding his housing placement.

Plaintiff also points out that the Complaint also alleges that Defendants retaliated against him by issuing him false disciplinary reports for allegedly scraping paint off of his bed and for gang related activity. Defendants fail to address these claims in their summary judgment motion; consequently, these claims of retaliation shall proceed to trial.

**B.**     **Count II - Denial of Access to the Courts**

The Complaint also alleges that Defendant Allsup denied Plaintiff access to the courts by refusing to copy exhibits, provide him with case law needed for his cases, and intentionally altering his library requests. Plaintiff alleges that these actions prevented him accessing the courts in two ways: (1) by preventing him from preparing his post-conviction relief petitions in order to overturn his conviction; and (2) by preventing him from preparing his retaliation case against Defendant Allsup and other department employees, which resulted in him losing his case on a motion to dismiss. Defendant Allsup argues that Plaintiff's claim as it relates to his post-conviction relief, is barred by the *Heck* doctrine. Allsup furher contends that Plaintiff's claim regarding his state retaliation case fails because Plaintiff has not shown that he suffered an actual injury.

**1.**     *Heck v. Humphrey*

Defendant Allsup claims that Plaintiff's denial of access to the courts claim against her,

as it relates to Plaintiff's post-conviction proceedings, is barred by the doctrine established in *Heck v. Humphrey*, **512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994**). In *Heck*, the Supreme Court held that a prisoner is barred from pursuing a § 1983 claim when "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Heck,* **512 U.S. at 487, 114 S.Ct. 2364, 129 L.Ed.2d 383**. *Heck* bars a prisoner from seeking damages for denial of access to the courts until his conviction is overturned or invalidated. *Hoard v. Reddy*, **175 F.3d 531, 534 (7th Cir. 1999)**. *See also Nance v. Vieregge*, **147 F.3d 589, 591 (7th Cir. 1998)**. This is because a denial of access to the courts claim requires that an inmate show an actual injury. *In re Maxy*, **674 F.3d 658, 661-62 (7th Cir. 2012) (citing** *Lewis c. Vasey*, **518 U.S. 343, 353, 116 S.Ct. 2174, 125 L.Ed.3d 606 (1996)(An inmate's right "is violated when a prisoner is deprived of such access and suffers actual injury as a result."))**. An inmate must allege "that some action by the prison has frustrated or is impeding an attempt to bring a non-frivolous legal claim." *Id.* **at 662**. However, under *Heck*, "where the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated." *Hoard*, **175 F.3d at 534;** *see also Nance*, **147 F.3d at 591 ("the holding of** *Lewis* **that a claim based on deprivation of access to the courts requires proof of concrete injury, combined with the holding of** *Heck*, **means that a prisoner in [plaintiff's] position must have the judgment annulled before damages are available.")**.

Here, Plaintiff cannot meet his burden for his denial of access to the courts claim without showing that his conviction has been overturned. While Plaintiff tries to distinguish his case, the Court finds that the facts in this case are very similar to those presented in *Hoard*. In *Hoard*, the inmate sought damages from the correctional facility for denying him access to the courts "by hindering his efforts to litigate a state-court collateral attack on his conviction." *Hoard*, **175 F.3d at 532**. The

Seventh Circuit affirmed the dismissal of Hoard's case under *Heck*, noting that an inmate complaining that he is being hindered by prison officials in his attempts to get his conviction set aside, is not entitled to damages until such conviction is indeed set aside. *Id*. **at 534.**

In this case, as in *Hoard*, Plaintiff argues that Defendant Allsup's refusal to copy certain exhibits and provide him with case law and legal materials prevented him from successfully preparing his post-conviction case in Illinois which was dismissed by the Illinois Appellate Court. Plaintiff tries to argue that he falls within an exception to *Heck* noted by the Seventh Circuit in *Hoard*. The appellate court stated that "there is probably an exception to the rule of *Heck* for cases in which no route other than a damage action under Section 1983 is open to the person to challenge his conviction." *Id*. **at 533.** However, the Seventh Circuit has not determined when all routes are considered closed off. In *Hoard,* the inmate was not barred from forever pursuing state post-conviction remedies, and in *Nance*, the appellate court noted that relief in that case was not *impossible* as the inmate could have sought a pardon from the governor. Clearly, even if, as the Court stated in *Hoard*, there is an exception for those cases in which it is impossible for an inmate to get his conviction overturned, Plaintiff does not fall within that exception. Plaintiff has never alleged that there are no further options for him to pursue to try to overturn his conviction. Plaintiff alleges that he was unable to properly appeal his conviction, but he does not state or otherwise indicate that he has been forever foreclosed from pursuing any post-conviction remedy at the state level or pursuing a state court collateral attack. Nor does Plaintiff appear to be seeking prospective relief in the form of an injunction to prevent Defendant from continuing to block his access to the court, which would be actionable under § 1983, nor has he alleged a continuing hindrance. *See Nance*, **147 F.3d at 591 (noting that the inmate did not allege an ongoing hindrance or that he might be subject to another deprivation of legal materials);** *Hoard*, **175 F.3d at 533 (noting that an inmate could use 42 U.S.C. § 1983 to seek an injunction in order to**

**clear his block access to the court)**.  Therefore, the Court **FINDS** that Plaintiff's denial of access

to the courts claim, as it relates to his post-conviction case, is barred by the doctrine set forth in *Heck*.

Accordingly, the Court **GRANTS** Defendants  summary judgment as to Count II, to the extent that

Plaintiff claims Defendant Allsup denied him access to the courts in preparing his post-conviction case.

2.      **State Retaliation Case**

Defendant Allsup also maintains that she is entitled to summary judgment on Plaintiff's

denial of access to the courts claim as it relates to Plaintiff's state retaliation case against her.  Prisoners,

like all individuals, "have a right to petition the Government for redress of grievances which, of course,

includes 'access of prisoners to the courts for the purpose of presenting their complaints.'"  *Bridges*

*v. Gilbert***, 557 F.3d 541, 553 (7th Cir. 2009) (citing** *Cruz v. Beto***, 405 U.S. 319, 321, 92 S.Ct. 1079**

**(1972)).** *See also Bounds v. Smith***, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (Prisoners**

**have a right to "adequate, effective, and meaningful" access to the courts.).**  Consequently,

officials are not allowed to unreasonably interfere with an inmate's access to the courts.  *See Lewis v.*

*Casey***, 518 U.S. 343, 350, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996).**  Prison officials must "provide

prisoners with the necessary tools 'to attack their sentences, directly or collaterally,' and 'to challenge

the conditions of their confinement." *Bridges***, 557 F.3d at 553 (quoting** *Lewis***, 518 U.S. at 355, 116**

**S.Ct. 2174, 135 L.3d.2d 606).**  An inmate, however, is required to show actual injury "in the form of

interference with a 'nonfrivolous legal claim.'" *Id***. (citing** *Lewis***, 518 U.S. at 353, 116 S.Ct. 2174, 135**

**L.Ed.2d 606);** *see also Johnson v. Barczak***, 338 F.3d 771, 772 (7th Cir. 2003) (Inmate must prove**

**"he suffered an actual injury by showing that unjustified acts or conditions hindered his ability**

**to pursue a nonfrivolous legal claim.").**

Here, Plaintiff has not shown that he suffered an actual injury.  Plaintiff maintains that

he was hindered in pursuing his state court retaliation claim against Allsup and others as a result of being

sent to segregation for a disciplinary ticket for scraping paint off of his bed.  According to Plaintiff, being in segregation denies him access to the law library to pursue his claim, which was ultimately dismissed by the state court at the summary judgment phase.  Nevertheless, there is no evidence in the record that supports Plaintiff's assertions.  In fact, as Defendants point out, Plaintiff filed a motion for extension of time to respond to the dispositive motion in that case, and he was granted leave to conduct further research in the law library (Doc. 60 Ex. 4).  Plaintiff was then able to file a sixty-one (61) page response to the motion (Doc. 60 Ex. 5).  Further, Plaintiff has failed to show how being in segregation hindered his ability to respond to a motion that had not even been filed at the time he was in segregation.  Defendants motion for summary judgment was not filed until August 28, 2009, at which time Plaintiff was no longer in segregation for his disciplinary ticket, as he was released from segregation on July 22, 2009 (Doc. 60 Exs. 3 and 10).  Accordingly, this Court finds no evidence of actual injury caused by Plaintiff being placed in segregation.  It appears from the record that Plaintiff was able to file and pursue his case and adequately respond to the summary judgment motion.

Further, the Court notes that there is no evidence that Defendant Allsup was in any way involved with issuing or prosecuting the disciplinary ticket against Plaintiff which sent him to segregation.  Nor is there any evidence in the record that Allsup had anything to do with hindering Plaintiff in litigating his state court case.  Plaintiff alleges in his Complaint that Allsup refused to copy certain exhibits and provide him with case law, thereby hindering his post-conviction efforts.  However, Plaintiff's only allegations regarding the state court retaliation case is that he was hindered by being placed in segregation as a result of his disciplinary ticket.  There is no evidence that Allsup, herself, hindered Plaintiff's efforts at litigation.  Accordingly, the Court finds that Plaintiff Allsup is also entitled to summary judgment on Plaintiff's denial of access to the courts claim as it relates to Plaintiff's state retaliation case.

## V.  <u>Conclusion</u>

For the reasons stated, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' motion for summary judgment (Doc. 59).  The Court **GRANTS** Defendant Allsup's motion for summary judgment as to Count II, the claim of denial of access to the courts.  The Court also **GRANTS** Defendant Allsup's summary judgment motion as it relates to Count I of Plaintiff's claim for retaliation, to the extent the claim alleges that Defendant Allsup retaliated against Plaintiff by issuing him a disciplinary ticket for threats and refused to provide him access to legal materials prior to his filing of his state retaliation claim.  All other aspects of the Count I retaliation claim remain for trial.  Thus, the only issues left for trial are the retaliation claim against Allsup for any refusal to provide legal materials after the filing of his state retaliation case, and claims of retaliation against the remaining Defendants, Jennifer Clendenin, Jeannette Cowan, Lawrence Kania, William Spiller, Shannis Stock and Kathy Westerman, for placing Plaintiff in moderate aggression level housing and issuing him disciplinary tickets for scraping paint off of his bed frame and for gang activities.

**IT IS SO ORDERED.**

**DATED: June 15, 2012**

**s/ <i>Michael J. Reagan</i>**\
**MICHAEL J. REAGAN**\
**UNITED STATES DISTRICT JUDGE**
